## MIMS & MIMS *vs.* STURDEVANT.

1. A father executes to his daughter, a married woman, a deed of gift for a slave, which does not create a separate estate in the wife, but vests the property absolutely in the husband: The husband, an illiterate man, believing that his marital rights are excluded, after the slave has remained in his possession some two or three months, refuses to let it remain longer; whereupon the wife sends the slave and deed to her father, informing him of the facts and requesting him to do the best he can for her: The father receives possession of both, saying that he would put the slave to work and account to his daughter for it, but died in possession of the slave more than six years thereafter, without a further recognition of the title created by the deed. *Held—*

I. That a charge, which assumes that the after possession of the father was in subordination to the title created by the deed, is erroneous, as withdrawing from the jury the consideration of the *quo animo* the possession was held.

II. That there was no error in refusing to charge that the return of the slave and deed to the father was a revocation of the gift.

Error to the Circuit Court of Monroe. Tried before the Hon. John Bragg.

The facts are stated in the opinion of the court.

Blount, for the plaintiff:

1. The plaintiff below showed no title to the slave for whose services hire is claimed. A deed of gift is a contract which, like all other contracts, may be rescinded by the consent of the parties thereto. The testimony shows a recission of the gift on the part of Sturdevant and wife, by returning the deed and negroes to the testator, (Britton Mims,) *by whom they were received.* This acceptance of the deed and slaves amounted to

an entire revocation of the original gift.   Thompson v. Ward, 1 N. Hamp. 9; 4 Am. Com. Law, 274; Jackson v. Chase, 2 Johns. Rep. 84; Mason v. Grant, 21 Maine Rep. 160; Mc-Nulty v. Cooper, 3 Gill. & Johns. 219.

2. The evidence of the ownership of the slave was the deed. Parol evidence could not be received of its contents without accounting for the absence of the original.   There was no evidence that it was lost or destroyed.   If shown to be in the possession of plaintiff in error, upon notice and refusal to produce it, secondary evidence would have been admissible.   If in the possession of a third party a subpœnea *duces tecum*, would compel its production.   Smith v. Armistead's ex'rs, 7 Ala. Rep. 698.

3. The expression of the testator to the witness (Brown,) that "he would put the negro to work and account to Peggy something for it," was a mere gratuitous promise to do something for his daughter without consideration, and for which no action would lie.   Hatchell v. Odom, 2 Dev. & Batt. 302. There is evidence showing that the slaves always remained in the possession of the testator until his death, after they were surrendered by the plaintiff.   They therefore had neither the title, possession or right of possession.   The declaration of the testator vested no title—was made to a stranger—did not relate to the slaves, and the "*something*" was a *mere intention* of compensation in some other way, for which no action would lie.

4. It is immaterial what were the terms of the deed, its recission or cancellation being shown.   The defendants in error having once had the deed in their possession, are charged with a knowledge of their rights under it.   A grantee is supposed to be conizant of the facts stated in his own instrument of title.   Hudson v. Warner, 2 Harris & Gill, 415; Hale's adm'r v. Creswell, 12 Gill & Johns. 49, 50.

Cooper, contra.

DARGAN, J.—The defendant in error sued the plaintiffs in error, to recover hire for a slave that had performed labor whilst in their possession.   The evidence showed that the slave belonged to the father of Mrs. Sturdevant, the plaintiff's

wife, who in December 1837, executed a deed of gift for the slave to his daughter, and delivered the deed and the negro to her. The negro remained some two or three months in the possession of the plaintiff, but believing that by the terms of the gift, he, the husband, had no right to the slave, he objected to her remaining longer on his premises, whereupon his wife sent the negro back to her father, and also the deed of gift, accompanied with a note informing him that her husband was unwilling that the slave should remain on his premises as she was not his property, and requesting him to do the best he could for her. On the return of the negro, the father of plaintiff's wife became excited, and threw down the deed and note, but said he would put the negro to work and account to his daughter something for it. The slave remained in the possession of the father from the time of its return in 1838, until his death in July 1845, and afterwards came to the possession of the plaintiff in error, but in what manner is not shown by the record. The cause however, has been argued as if they obtained the possession as the administrators of the donor, and we will therefore presume that they took possession of the slave in that character. The defendant in error, is an illiterate man, not able to read writing, and never heard the deed read. The deed was not produced, but the witness who deposed to its contents, stated that the deed conveyed the slave to the wife of the plaintiff and the heirs of her body. There was no proof to show that the father, in his life time, ever paid hire for the use of the slave, or recognized afterwards the title of his daughter or of the defendant in error. The court charged the jury, that whatever might have been the impression of the plaintiff in regard to the character of the gift, if in truth it was not a settlement upon the wife for her sole and seperate use, the husband acquired by the gift such property in the slave, as enabled him to recover in this action, notwithstanding the slave had been sent back to the donor.

We think the court erred in giving this charge. The question for the jury to determine under this evidence was, what was the character of the possession of the father of Mrs. Sturdevant after the slave was returned to him with the deed. Did he hold the slave for the use of the plaintiff, or did he hold the possession afterwads as his own. We admit that the

mere ignorance of the plaintiff of the right vested in him by the deed would not preclude him from asserting that title afterwards, if in the mean time he has not been divested of it, yet as he refused to suffer the slave to remain under his control, and his wife sent it and the deed back to her father, who retained possession of the slave for more than six years without ever afterwards recognizing the title created by the deed, it cannot be assumed as a legal proposition, that the character of the possession of the donor, was in subordination to the title created by the deed, or that he held the slave as a trustee. His possession may have been adverse to the title of the plaintiff; whether it was or not, depended under this evidence on the *quo animo* with which he held the possession. If the father of Mrs. Sturdevant considered the slave during the time he held possession, after the slave was returned to him as belonging to Mrs. Sturdevant, then his possession was not hostile nor adverse to the title of the plaintiff. If however, he considered the slave as his own, and so held possession for more than six years, the title of the plaintiff would be defeated by the statute of limitations, and whether the possession of the father was adverse, or in subordination to the title created by the deed, was a fact under the evidence for the jury alone to determine. The charge, however, rendered it unnecessary for the jury to consider of this fact, but assumed as a legal conclusion, that the title of the plaintiff was not affected by this possession. In this the court erred.

We see, however, no other error in the ruling of the court. We think the charge that was requested, that the sending back the slave and the deed was a revocation of the gift was properly refused, for whether the gift was revoked or not, depended on the intention of the parties. This was a fact peculiarly for the jury under the evidence to determine, and the court correctly refused to assume it as a legal conclusion.

The judgment must be reversed, and the cause remanded.